# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| LESLIE BURRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:24-cv-00576-FJG |
| v. | ) | |
| | ) | |
| VEEVA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND
## AFFIRMATIVE DEFENSES TO PETITION FOR DAMAGES

Defendant Veeva Systems, Inc. ("Defendant"), for its Answer, states the following:

## INTRODUCTION

1. In violation of the Missouri Human Rights Act RS.Mo. §213.010, et seq. ("MHRA"), Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA/ ADAAA") and Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), Plaintiff, while an employee of Defendant, was subjected to unlawful discrimination.

**ANSWER: The allegations in Paragraph 1 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant states Plaintiff purports to bring this action pursuant to the Missouri Human Rights Act RSMo. §213.010, *et seq*. ("MHRA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA/ADAAA") and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), but expressly denies engaging in any unlawful employment practices. Defendant denies any remaining allegations in Paragraph 1 of Plaintiff's Petition.**

2. Plaintiff seeks compensatory and punitive damages against Defendant.

**ANSWER: Defendant admits Plaintiff purports to seek compensatory and punitive damages against Defendant, but expressly denies engaging in any unlawful employment practices and denies it is liable to Plaintiff in any way.**

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff Leslie Burrell is and, at all relevant times herein, was a female resident and citizen of the State of Missouri.

**ANSWER: Upon information and belief, in response to Paragraph 3 of Plaintiff's Petition, Defendant admits Plaintiff is a female who lives in Missouri. Defendant is without knowledge sufficient to admit or deny any remaining allegations in Paragraph 3 of Plaintiff's Petition, and therefore denies same.**

4.      Upon information and belief, Defendant Veeva Systems, Inc. ("Defendant" or "Veeva") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of California, registered to do business in the State of Missouri and conducting substantial business within Missouri.

**ANSWER: Defendant admits it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California. Defendant admits it is registered to do business in the State of Missouri. Defendant denies any remaining allegations in Paragraph 4 of Plaintiff's Petition.**

5.      At all times relevant to this matter, Defendant was an employer as defined by § 213.010 of the MHRA, in that Defendant is a person engaged in an industry affecting commerce that has six or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

2

**ANSWER:** The allegations in Paragraph 5 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits it is engaged in an industry affecting commerce and has six or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Defendant denies any remaining allegations in Paragraph 5 of Plaintiff's Petition.

6. At all relevant times, Plaintiff was a "qualified employee" as defined by 42 USC §12111(8) of the ADA.

**ANSWER:** The allegations in Paragraph 6 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 6 of Plaintiff's Petition.

7. At all relevant times, Defendant was a "covered" employer as defined in 42 USC § 12111(5)(A) of the ADA.

**ANSWER:** The allegations in Paragraph 7 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits it is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year. Defendant denies any remaining allegations in Paragraph 7 of Plaintiff's Petition.

8. At all material times, Defendant was an "employer" within the meaning ADA, 42 U.S.C. § 12111(5)(A), in that it is engaged in industry affecting commerce, and at all relevant times employed more than 15 persons.

**ANSWER:** The allegations in Paragraph 8 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits it is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year. Defendant denies any remaining allegations in Paragraph 8 of Plaintiff's Petition.

9.      At all times relevant to this matter, Defendant has continuously been and is now an employer engaged in an industry affecting commerce as defined by 29 U.S.C. §2611(4).

**ANSWER:** The allegations in Paragraph 9 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits it is engaged in an industry affecting commerce and has fifty or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year. Defendant denies any remaining allegations in Paragraph 9 of Plaintiff's Petition.

10.      At all relevant times herein, Plaintiff was an eligible employee as defined by 28 U.S.C. §2611(2)(A)-(B).

**ANSWER:** The allegations in Paragraph 10 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits Plaintiff was an employee who had been employed for at least twelve months by Defendant and for at least 1,250 hours of service with Defendant during the previous twelve-month period.

11.     At all relevant times herein, Defendant has continuously been and is now doing business in the State of Missouri and employed 50 or more individuals at the time of its unlawful conduct.

**ANSWER:  The allegations in Paragraph 11 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits it does business in the State of Missouri and has fifty or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year. Defendant denies any remaining allegations in Paragraph 11 of Plaintiff's Petition.**

12.     At all times relevant to this matter, Defendant was a citizen of the States of Delaware and California.

**ANSWER:  The allegations in Paragraph 12 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.**

13.     Defendant is an entity that acts though its agents and/or employees. It is liable for the conduct of its agents and/or employees acting within the course and scope of their agency and/or employment, its own negligence, the acts of its agents and/or employees which it knowingly ratifies, injuries incurred by agents' and/or employees' performance of its non-delegable duties, acts done by agents and/or employees for which the agency and/or employment relationship allows or assists the employee and/or agent to perform, and acts its agents and/or employees take by virtue of their position with Defendant.

**ANSWER:  Defendant admits that Plaintiff has generally recited the tenents of agency law, but denies that any of its agents, servants, or employees engaged in any unlawful**

5

actions in the scope and course of their agency and employment. **Defendant denies the remaining allegations in Paragraph 13 of Plaintiff's Petition.**

14.     At all times relevant herein, Defendant's employees were acting within the course and scope of their employment and/or agency.

**ANSWER:  Defendant denies that any of its agents, servants, or employees engaged in any unlawful actions in the scope and course of their agency and employment. Defendant denies the remaining allegations in Paragraph 14 of Plaintiff's Petition.**

15.     This Court has specific personal jurisdiction over Defendant because Defendant conducts ongoing and substantial business in the State of Missouri, and because the unlawful practices alleged in this Petition were committed in Missouri.

**ANSWER:  Defendant admits this Court has jurisdiction over this matter because Defendant conducts business in the State of Missouri and because the alleged events or omissions giving rise to Plaintiff's claims allegedly occurred in the Western District of Missouri, Western Division, by virtue of Plaintiff's claims. Defendant denies violating the MHRA, the ADA/ADAAA, the FMLA, or any other law. Defendant denies the remaining allegations in Paragraph 15 of Plaintiff's Petition.**

## CONDITIONS PRECEDENT

16.     On Plaintiff filed a timely Charge of Discrimination ("Charge") with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunities Commission ("EEOC"). The Charge was assigned No. E-11/23-55677/ 28E-2024-00191. *A true and accurate copy of the Charge is attached hereto and incorporated herein by reference as **Exhibit A**.*

**ANSWER:  Upon information and belief, in response to Paragraph 16 of Plaintiff's Petition, Defendant admits that on November 7, 2023, Plaintiff filed a Charge of**

6

Discrimination with the MCHR and EEOC, which document speaks for itself. Defendant denies the remaining allegations in Paragraph 16 of Plaintiff's Petition.

17.     Plaintiff received from the MCHR the Right to Sue Notice with respect to the Charge. *A true and accurate copy of the Right to Sue Notice is attached hereto and incorporated herein by reference as **Exhibit B**.*

**ANSWER:  Upon information and belief, in response to Paragraph 17 of Plaintiff's Petition, Defendant admits the MCHR issued Plaintiff a Right to Sue Notice with respect to her Charge, which document speaks for itself. Defendant is without knowledge sufficient to admit or deny any remaining allegations in Paragraph 17 of Plaintiff's Petition, and therefore denies same.**

18.     On or about May 28, 2024, Plaintiff received from the EEOC the Right to Sue Notice with respect to the Charge. *A true and accurate copy of the EEOC Right to Sue Notice is attached hereto and incorporated herein by reference as **Exhibit C**.*

**ANSWER:  Upon information and belief, in response to Paragraph 18 of Plaintiff's Petition, Defendant admits the EEOC issued Plaintiff a Right to Sue Notice on May 28, 2024, with respect to her Charge, which document speaks for itself. Defendant is without knowledge sufficient to admit or deny any remaining allegations in Paragraph 18 of Plaintiff's Petition, and therefore denies same.**

19.     This action is timely filed within ninety (90) days of the issuance of the Notices of Right to Sue (attached as Exhibits B and C).

**ANSWER:  Upon information and belief, in response to Paragraph 19 of Plaintiff's Petition, Defendant admits this lawsuit was filed within 90 days of May 13, 2024 and May 28, 2024, the dates of issuance of the MCHR and EEOC Notices of Right to Sue, respectively.**

20.     Plaintiff has exhausted all conditions precedent to filing this action.

**ANSWER:  The allegations in Paragraph 20 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 20 of Plaintiff's Petition, and therefore denies same.**

## FACTUAL ALLEGATIONS

21.     Plaintiff began employment with Defendant on or about March 28, 2022 as an Associate Director of Marketing.

**ANSWER:  Defendant admits the allegations in Paragraph 21 of Plaintiff's Petition.**

22.     At the time of recruiting Plaintiff, Nitsa Zuppas, Chief Marketing Officer for Defendant, told Plaintiff that Plaintiff could shadow other management-level employees to learn the new industry and Veeva's operations for a year and then transition into a director role that Plaintiff saw fit.

**ANSWER:  Defendant denies the allegations in Paragraph 22 of Plaintiff's Petition.**

23.     On or about October 31, 2022, Katie Duzan started her employment with Defendant as Vice-President for Marketing and Plaintiffs direct supervisor.

**ANSWER:  Defendant admits the allegations in Paragraph 23 of Plaintiff's Petition.**

24.     On or about November 30, 2022, Plaintiff was diagnosed with breast cancer.

**ANSWER:   Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 24 of Plaintiff's Petition, and therefore denies same.**

25.     On or around November 30, 2022, Plaintiff informed Ms. Duzan about her cancer diagnosis.

**ANSWER:  Defendant admits the allegations in Paragraph 25 of Plaintiff's Petition.**

26.     Starting in or around January 2023, Plaintiff had to undergo several surgeries for her cancer and complications related to the mastectomy.

**ANSWER:  Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 26 of Plaintiff's Petition, and therefore denies same.**

27.     On or about January 23, 2023, Plaintiff had an informal "off the record" check-in meeting with Ms. Duzan due to upcoming surgery for breast cancer.

**ANSWER:  Defendant admits on or about January 23, 2023, Ms. Duzan held an informal check-in meeting with Plaintiff to plan for her upcoming leave due to her surgery. Defendant denies the remaining allegations in Paragraph 27 of Plaintiff's Petition.**

28.     During the January 23, 2023, meeting, Plaintiff expressed to Ms. Duzan that the abrupt sabbatical of Plaintiffs direct manager on June 1, 2022, and later resignation of another director left Plaintiff without management support or guidance.

**ANSWER:  Defendant admits during the January 2023 meeting, Plaintiff expressed to Ms. Duzan that she felt she did not have management support or guidance before Ms. Duzan became her direct supervisor on October 31, 2023. Defendant denies the remaining allegations in Paragraph 28 of Plaintiff's Petition.**

29.     Plaintiff shared her concern that the lack of onboarding time, management and experience may have impacted her long-term career prospects with Veeva.

**ANSWER:  Defendant admits Plaintiff shared her concern that she received a lack of onboarding. Defendant denies the remaining allegations in Paragraph 29 of Plaintiff's Petition.**

30.     Plaintiff asked to revisit and outline an onboarding plan for her when she returned from her leave to allow her the same opportunities to learn the industry and the company as Ms. Duzan who had a 90-day onboarding experience with learning as her only deliverable.

**ANSWER:  Defendant denies the allegations in Paragraph 30 of Plaintiff's Petition.**

31.     Plaintiff shared with Ms. Duzan her enthusiasm to get back to work and that she felt the role was a good fit for her given her familiarity with the buyers and insight into their wants and needs.

**ANSWER:  Defendant denies the allegations in Paragraph 31 of Plaintiff's Petition.**

32.     Plaintiff does not recall any discussion about the color to be assigned to her engagement.

**ANSWER:   Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 32 of Plaintiff's Petition, and therefore denies same.**

33.     On or about January 27, 2023, Plaintiff had a double mastectomy.

**ANSWER:   Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 33 of Plaintiff's Petition, and therefore denies same.**

34.     On or about March 14, 2023, Plaintiff was admitted into the hospital with an infection developed after her mastectomy.

**ANSWER:   Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 34 of Plaintiff's Petition, and therefore denies same.**

35.     On or about March 16, 2023, Plaintiff was discharged on maintenance antibiotics.

**ANSWER:   Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 35 of Plaintiff's Petition, and therefore denies same.**

36.     Between January and the end of March 2023, Plaintiff was using her PTO.

**ANSWER:  On information and belief, Defendant admits between January and March 2023, Plaintiff used PTO.**

37.     On or about March 21, 2023, Ms. Duzan advised the team that Plaintiff would be going out on disability and that no one was to give Plaintiff any additional work to allow Plaintiff to focus on wrapping up a few projects she named.

**ANSWER:  Defendant admits on or about March 21, 2023, Ms. Duzan advised the team that Plaintiff would be out of office on leave for six weeks, and asked the team not to add anything to Plaintiff's plate to allow her to focus on wrapping up two specific projects. Defendant denies the remaining allegations in Paragraph 37 of Plaintiff's Petition.**

38.     On or about March 22, 2023, Ms. Duzan emailed to Employee Success a Check-in Form_Leslie.docx that she said represented agreement from the informal conversation between Ms. Duzan and Plaintiff in January.

**ANSWER:  Defendant admits on or about March 22, 2023, Ms. Duzan emailed Employee Success a copy of the Check-in Form that represented the agreement between Plaintiff and Ms. Duzan from the informal conversation in January. Defendant denies the remaining allegations in Paragraph 38 of Plaintiff's Petition.**

39.     The Check-in Form misrepresented the conversation between Plaintiff and Ms. Duzan to say that Plaintiff agreed to a "yellow" status rooted in uncertainty of role fit.

**ANSWER:  Defendant admits the Check-in Form stated Ms. Duzan and Plaintiff rated engagement and status as a yellow and agreed that it was rooted in uncertainty of role fit. Defendant denies the Check-in Form misrepresented the conversation between Plaintiff and Ms. Duzan and any remaining allegations in Paragraph 39 of Plaintiff's Petition.**

40.     Ms. Duzan stated in the Check-in Form that they would continue the check-in skills conversation, after Plaintiff returned from her leave for the surgeries related to her breast cancer.

**ANSWER:  Defendant admits Ms. Duzan stated in the Check-in Form that they would continue the check-in skills conversation in June when Plaintiff returned. Defendant denies the remaining allegations in Paragraph 40 of Plaintiff's Petition.**

41.     On or about March 24, 2024, Plaintiff asked Ms. Duzan why she submitted the document to Talent Development that misrepresented their January off-the-record conversation without letting Plaintiff know about the intention to do so.

**ANSWER:  Defendant admits Plaintiff asked Ms. Duzan why she submitted the document without letting Plaintiff know she planned to do so. Defendant denies the remaining allegations in Paragraph 41 of Plaintiff's Petition.**

42.     Plaintiff told Ms. Duzan that she did not believe or agree to her engagement being rated yellow or that she was not a good fit for the role and that Plaintiff would have never agreed to her engagement being yellow.

**ANSWER:  Defendant admits Plaintiff told Ms. Duzan that she did not agree to her engagement being rated yellow. Defendant denies the remaining allegations in Paragraph 42 of Plaintiff's Petition.**

43.     Plaintiff reiterated her desire to work on an onboarding plan with Ms. Duzan when she returned.

**ANSWER:  Defendant denies the allegations in Paragraph 43 of Plaintiff's Petition.**

44.     - Ms. Duzan suggested that "something must have changed" in the time since the January conversation.

**ANSWER: Defendant admits Ms. Duzan suggested Plaintiff must have changed her mind since the January conversation, because Plaintiff rated her engagement as yellow during that meeting. Defendant denies the remaining allegations in Paragraph 44 of Plaintiff's Petition.**

45.     Plaintiff stated that clearly nothing had changed and that Ms. Duzan's email was a misrepresentation of the January "off-the-record" conversation, and that Plaintiff wanted it to be corrected to represent the actual conversation

**ANSWER: Defendant admits Plaintiff made such claims, but Defendant denies the Check-in Form misrepresented the conversation between Plaintiff and Ms. Duzan and any remaining allegations in Paragraph 45 of Plaintiff's Petition.**

46.     Plaintiff stated that she wanted to correct the document before she went out on leave.

**ANSWER: Defendant admits the allegations in Paragraph 46 of Plaintiff's Petition.**

47.     Following this correspondence, during the Annual Compensation Review call, Ms. Duzan shared that the result of the Annual Compensation Review was to not give Plaintiff any salary increase.

**ANSWER: Defendant admits that during Plaintiff's Annual Compensation Review, Ms. Duzan shared Plaintiff would not receive a salary increase. Defendant denies the remaining allegations in Paragraph 47 of Plaintiff's Petition.**

48.     Ms. Duzan said there was no merit component and that Plaintiff had delivered as expected which did not warrant a pay increase.

**ANSWER: Defendant admits that during Plaintiff's Annual Compensation Review, Ms. Duzan shared that Defendant does not get cost of living salary increases and instead**

13

bases compensation on contribution. Defendant also admits that Ms. Duzan shared that Plaintiff's contribution was still in line with the amount she was currently paid, so she would not receive a salary increase. Defendant denies the remaining allegations in Paragraph 48 of Plaintiff's Petition.

49.     Plaintiff asked who-had provided input to the evaluation given the limited time Plaintiff worked with Ms. Duzan before Plaintiff's cancer diagnosis and subsequent leave and hospitalization.

**ANSWER:  Defendant admits Plaintiff asked Ms. Duzan who approved the compensation decision. Defendant denies the remaining allegations in Paragraph 49 of Plaintiff's Petition.**

50.     Ms. Duzan responded that it was Chief Executive Officer Peter Gassner and Ms. Zuppas.

**ANSWER:  Defendant admits Ms. Duzan informed Plaintiff all compensation decisions are approved by Ms. Zuppas and roll up to CEO Peter Gassner for final approval. Defendant denies the remaining allegations in Paragraph 50 of Plaintiff's Petition.**

51.     Plaintiff told Ms. Duzan that it was curious that Mr. Gassner would have input given that Plaintiff had not ever met to discuss her work with Mr. Gassner and that she would be surprised if Mr. Gassner even knew who Plaintiff was.

**ANSWER:  Defendant denies the allegations in Paragraph 51 of Plaintiff's Petition.**

52.     Upon information and belief, other members of the clinical data management systems team, which included Plaintiff, received a pay increase.

**ANSWER:  Defendant admits the allegations in Paragraph 52 of Plaintiff's Petition.**

53.     Plaintiff also pointed out that there was no Director for a while, Plaintiff had to do the work of the Director, so if other associates received raises, they received credit for the work that Plaintiff did.

**ANSWER:  Defendant denies the allegations in Paragraph 53 of Plaintiff's Petition.**

54.     On or about March 23, 2023, Plaintiff received approval for leave under the FMLA starting on or about April 6, 2023, as well as for short-term disability benefits to be provided concurrently with her FMLA leave.

**ANSWER:  Upon information and belief, in response to Paragraph 54 of Plaintiff's Petition, Defendant states Plaintiff received approval for leave under the FMLA beginning on or about April 6, 2023, as well as for short-term disability benefits to be provided concurrently with her FMLA leave. Defendant is without knowledge sufficient to admit or deny the remaining allegations in Paragraph 54 of Plaintiff's Petition, and therefore denies same.**

55.     On or about April 2, 2023, Ms. Duzan emailed Plaintiff, stating "the ball is in your court to schedule" the check-in.

**ANSWER:  In response to Paragraph 55 of Plaintiff's Petition, Defendant admits on April 2, 2023, Ms. Duzan emailed Plaintiff, stating "You had wanted to do a check-in before you head OOO. Did you still want to do that? The ball is in your court to schedule, since you're also working around appointments."**

56.     Ms. Duzan acknowledged that Plaintiff was working around pre-op appointments and offered to be flexible Monday afternoon or midday Tuesday.

**ANSWER:  Defendant admits the allegations in Paragraph 56 of Plaintiff's Petition.**

15

57.     Ms. Duzan asked if the preference was to schedule or just wait until Plaintiff came back from leave.

**ANSWER:  In response to Paragraph 57 of Plaintiff's Petition, Defendant admits on April 2, 2023, Ms. Duzan emailed Plaintiff, stating "Please let me know if you'd prefer me to schedule or just wait until you're back. Your call entirely. Thanks!"**

58.     Plaintiff suggested to complete the check-in after Plaintiff returned from leave.

**ANSWER: Defendant denies the allegations in Paragraph 58 of Plaintiff's Petition.**

59.     On April 6, 2023, Plaintiff was readmitted into the hospital for another cancer-related surgery.

**ANSWER:  Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 59 of Plaintiff's Petition, and therefore denies same.**

60.     On or about June 28, 2023 Plaintiff returned to work from her FMLA leave.

**ANSWER:  Defendant denies the allegations in Paragraph 60 of Plaintiff's Petition.**

61.     Plaintiff had numerous appointments related to breast reconstruction through July 2023.

**ANSWER:  Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 61 of Plaintiff's Petition, and therefore denies same.**

62.     Before her cancer diagnosis, Plaintiff was the lead on certain marketing projects, such as CDMS content track for both EU and NA Summit.

**ANSWER:  Defendant admits, at one point, Plaintiff was the lead on NA Summit. Defendant denies the remaining allegations in Paragraph 62 of Plaintiff's Petition.**

63.     Upon returning to work after her FMLA leave and short-term disability for surgeries related to her cancer, Plaintiff was not allowed to resume her lead role in these projects.

16

**ANSWER: Defendant admits when she returned from FMLA leave and short-term disability, she was placed on the Outsource track for NA Summit because the composition of the Clinical Data Management Systems Team had changed. Defendant denies the remaining allegations in Paragraph 63 of Plaintiff's Petition.**

64.     Upon Plaintiffs return to work after her short-term disability and medical leave for surgeries related to her cancer, Ms. Duzan commented on several occasions, without any basis or justification, that Plaintiff could no longer perform the duties that Plaintiff could successfully perform before her diagnosis.

**ANSWER: Defendant denies the allegations in Paragraph 64 of Plaintiff's Petition.**

65.     Soon after Plaintiff returned to work on or about June 28, 2023, Ms. Duzan scheduled a "bi-annual check-in - and essentially the check-in ... intended to finish in Q4" to be held several weeks later, on or about July 26, 2023.

**ANSWER: Defendant admits soon after Plaintiff returned to work from leave, Ms. Duzan scheduled the check-in that she and Plaintiff could not complete before Plaintiff went on leave on or about July 26, 2023. Defendant denies the remaining allegations in Paragraph 65 of Plaintiff's Petition.**

66.     Plaintiff sent Ms. Duzan her check-in document in writing at the start of the meeting and shared the project that Plaintiff felt demonstrated competency in the core skills required of marketing associates.

**ANSWER: Defendant denies the allegations in Paragraph 66 of Plaintiff's Petition.**

67.     During the check-in meeting, Ms. Duzan asked if Plaintiff expected to manage associates.

**ANSWER: Defendant denies the allegations in Paragraph 67 of Plaintiff's Petition.**

17

68. When Plaintiff responded no, Ms. Duzan said "because that is something that would not be possible for you at all in the foreseeable future."

**ANSWER: Defendant denies the allegations in Paragraph 68 of Plaintiff's Petition.**

69. Ms. Duzan then asked Plaintiff to outline her weaknesses.

**ANSWER: Defendant admits during the Check-in meeting, Ms. Duzan asked Plaintiff to identify both "Strengths" and "Growth Areas." Defendant denies the remaining allegations in Paragraph 69 of Plaintiff's Petition.**

70. Plaintiff said that she felt everyone should continuously grow and advance their skills even if they had competency and that in the document, Plaintiff asked to revisit the onboarding plan to determine areas that would grow Plaintiffs skills.

**ANSWER: Defendant admits the July Check-in document noted Plaintiff stated she would like to revisit her onboarding. Defendant denies the remaining allegations in Paragraph 70 of Plaintiff's Petition.**

71. Ms. Duzan was belligerent in her attempts to get Plaintiff to claim that Plaintiff could not do things, that Plaintiff did not have the skills, that Plaintiff did not have a growth mindset because Plaintiff would not provide Ms. Duzan with a list of Plaintiffs weaknesses.

**ANSWER: Defendant admits that during the July check-in meeting, Plaintiff refused to identify a single "Growth Area." Defendant denies the remaining allegations in Paragraph 71 of Plaintiff's Petition.**

72. Ms. Duzan offered no positive feedback.

**ANSWER: Defendant denies the allegations in Paragraph 72 of Plaintiff's Petition.**

73. Ms. Duzan cited alleged negative feedback about Plaintiff from associates without reference who had complaints about Plaintiff.

**ANSWER: Defendant admits that during the July check-in meeting, Ms. Duzan provided Plaintiff with both "Strengths" and "Growth Areas" identified by other Veeva associates. Defendant denies the remaining allegations in Paragraph 73 of Plaintiff's Petition.**

74. Ms. Duzan said that she had real concerns over Plaintiffs performance since she had missed a key deadline for abstracts, and Plaintiff was the only associate who had.

**ANSWER: Defendant admits the allegations in Paragraph 74 of Plaintiff's Petition.**

75. Ms. Duzan said she was going to schedule more time because they needed to "get through this" and rank Plaintiffs growth areas.

**ANSWER: Defendant admits the allegations in Paragraph 75 of Plaintiff's Petition.**

76. Ms. Duzan did not provide any notes or written feedback at the time.

**ANSWER: In response to Paragraph 76 of Plaintiff's Petition, Defendant admits Ms. Duzan did not provide Plaintiff written feedback at that time, as is standard practice.**

77. Following the July 26, 2023 check-in meeting, Plaintiff invited Shannon Lynch from Employee Success Department to discuss the check-in meeting but Ms. Lynch never accepted the invites.

**ANSWER: In response to Paragraph 77 of Plaintiff's Petition, Defendant admits that on July 27, 2023, Plaintiff sent Shannon Lynch an email invite to discuss the check-in meeting on July 31, 2023, however, Ms. Lynch was out of office at the time, so Plaintiff received Ms. Lynch's automated out-of-office email reply.**

78. In Plaintiffs write-up, Plaintiff noted her concern over not being given meaningful opportunities or viewed as a leader with experience.

**ANSWER: Defendant denies the allegations in Paragraph 78 of Plaintiff's Petition.**

19

79. On or about July 28, 2023, Ms. Duzan scheduled 30 minutes to continue the check-in discussion which began on July 26, 2023.

**ANSWER: Defendant admits the allegations in Paragraph 79 of Plaintiff's Petition.**

80. During this meeting that lasted for an hour, Ms. Duzan had a written check-in document that she shared with Plaintiff later that day.

**ANSWER: Defendant admits the allegations in Paragraph 80 of Plaintiff's Petition.**

81. In the document, Ms. Duzan claimed that Plaintiff had been intermittently out of the office since returning from her leave and that Plaintiff was absent without notice three times in the prior week.

**ANSWER: Defendant admits that in the July check-in document, Ms. Duzan stated "[i]n the past month, you have been out of the office intermittently – at least three days in the past week – with no prior notice or calendar blocks." Defendant denies the remaining allegations in Paragraph 81 of Plaintiff's Petition.**

82. During these alleged absences, Plaintiff was working offline on the stats project and communicated this to Ms. Duzan.

**ANSWER: Defendant admits that around this time, Plaintiff communicated to Ms. Duzan that she was working on a stats project. Defendant denies Plaintiff informed Ms. Duzan she planned to work offline on the stats project and denies the remaining allegations in Paragraph 82 of Plaintiff's Petition.**

83. Ms. Duzan wrote a document that converted positive feedback from others associates into negative examples of weakness.

**ANSWER: Defendant denies the allegations in Paragraph 83 of Plaintiff's Petition.**

84.     Ms. Duzan also stated she had real concerns about Plaintiff's performance and ability.

**ANSWER:   Defendant admits Ms. Duzan identified multiple "Growth Areas" relating to Plaintiff's performance. Defendant denies the remaining allegations in Paragraph 84 of Plaintiff's Petition.**

85.     Ms. Duzan omitted key facts that didn't align with her assertions.

**ANSWER:  Defendant denies the allegations in Paragraph 85 of Plaintiff's Petition.**

86.     For example, Ms. Duzan attributed a missed deadline for abstracts to Plaintiff despite being told on multiple occasions that the speaker backed out and that the Strategy Lead who was responsible for securing speakers and developing the topic and agenda had not finalized the session topic that would enable Plaintiff to write the abstract.

**ANSWER:  Defendant admits Plaintiff missed her deadline for abstracts. Defendant also admits Plaintiff informed Ms. Duzan that a speaker backed out and that the Strategy Lead had not finalized the session topic, but denies those events had to occur to enable Plaintiff to write her abstract. Defendant denies the remaining allegations in Paragraph 86 of Plaintiff's Petition.**

87.     Ms. Duzan provided regular and ongoing support to all other members of the team except Plaintiff.

**ANSWER:  Defendant denies the allegations in Paragraph 87 of Plaintiff's Petition.**

88.     Ms. Duzan met with a director on the team for an hour twice a week, every week since she joined Veeva around March 2023.

**ANSWER: Defendant admits Ms. Duzan met with a newly hired director on the team for an hour twice a week while the director was onboarding to Veeva. Defendant denies the remaining allegations in Paragraph 88 of Plaintiff's Petition.**

89.     Ms. Duzan also met with a part-time Director on the team to sync for an hour twice a week, every week and met with the other two associates to sync regularly as well.

**ANSWER: Defendant admits Ms. Duzan met with a part-time director on the team while she was reentering her position after taking a sabbatical. Defendant denies the remaining allegations in Paragraph 89 of Plaintiff's Petition.**

90.     Ms. Duzan did not meet with Plaintiff on a regular basis but instead would ping or text questions that she then used to make the claims she shared in the Check-In Form.

**ANSWER: Defendant admits that since Plaintiff was an employee with over one year of experience, Ms. Duzan did not conduct regular one-on-one meetings with Plaintiff, but instead informed her she was available to schedule a meeting at any time necessary. Defendant denies the remaining allegations in Paragraph 90 of Plaintiff's Petition.**

91.     Since Plaintiff returned from her short-term disability/ FMLA leave related to her cancer, Ms. Duzan had also only met with Plaintiff two times to sync.

**ANSWER: Defendant admits between June 29, 2023, and August 2, 2023, Ms. Duzan scheduled and met with Plaintiff two times to sync. Defendant denies the remaining allegations in Paragraph 91 of Plaintiff's Petition.**

92.     Ms. Duzan was deliberately setting Plaintiff up to fail, rather than provide management support to succeed.

**ANSWER: Defendant denies the allegations in Paragraph 92 of Plaintiff's Petition.**

93.     On or about July 28, 2023, Plaintiff emailed Ms. Duzan and Shannon Lynch, Employee Success Partner, stating that Plaintiff felt "a marked change" in Ms. Duzan's attitude toward Plaintiff since Plaintiff shared her cancer diagnosis with Ms. Duzan in late November 2022, that this change continued since Plaintiff returned from her leave 4 weeks prior, that Ms. Duzan sought to find issues with Plaintiffs performance since Plaintiff had returned from the leave for her cancer treatment, and that Ms. Duzan held Plaintiff to a different standard than and treated her unequally as compared to other associates.

**ANSWER: Defendant admits Plaintiff sent an email as generally described above but denies engaging in any unlawful conduct and all remaining allegations in Paragraph 93 of Plaintiff's Petition.**

94.     Ms. Lynch never reached out to Plaintiff to address Plaintiffs concerns in the July 28, 2023 email.

**ANSWER: Defendant admits that Plaintiff sent Ms. Lynch an email on July 28, 2023, while Ms. Lynch was out of the office on vacation, and that Plaintiff received Ms. Lynch's automated out-of-office email reply. Defendant admits Plaintiff had scheduled a "Sync" with Ms. Lynch for July 31, 2023, and then at 9:43 AM on that date, moved the meeting to Friday, August 4, 2023. Defendant denies the remaining allegations in Paragraph 94 of Plaintiff's Petition.**

95.     Plaintiff pointed out where Ms. Duzan's assessment of Plaintiff was inaccurate and that this was retaliation and discrimination to be addressed and remedied immediately.

**ANSWER: Defendant admits that Plaintiff sent an email on July 28, 2023, expressing dissatisfaction with Ms. Duzan's assessment, but Defendant denies it engaged in any unlawful conduct and all remaining allegations in Paragraph 95 of Plaintiff's Petition.**

96.     Plaintiff shared with Ms. Duzan that she felt Ms. Duzan was putting pressure on Plaintiff to resign.

**ANSWER:  Defendant admits that Plaintiff shared a concern with Ms. Duzan on or about July 28, 2023, via an email, but Defendant denies engaging in any unlawful conduct and all remaining allegations in Paragraph 96 of Plaintiff's Petition.**

97.     On or about July 31, 2023, Plaintiff emailed Ms. Duzan to advise her that Plaintiff would submit comments to the Check-in Form.

**ANSWER:  Defendant admits that on or about July 31, 2023, Plaintiff emailed Ms. Duzan about a Check-in form, but Defendant denies all remaining allegations in Paragraph 97 of Plaintiff's Petition.**

98.     Plaintiff informed there were many things that were not true in the document, things Plaintiff did not agree with, and things that were omitted.

**ANSWER:  Defendant admits that on or about July 31, 2023, Plaintiff sent an email taking issue with the document, but Defendant denies engaging in any unlawful conduct and all remaining allegations in Paragraph 98 of Plaintiff's Petition.**

99.     Plaintiff further informed Ms. Duzan that she would send comments by end of day Tuesday, August 1 and asked that she not submit the Check-in Form as an agreed document without Plaintiffs comments and a copy of self-assessments.

**ANSWER:  Defendant admits that on or about July 31, 2023, Plaintiff emailed Ms. Duzan as described, but Defendant denies that the document was collaborative, denies engaging in any unlawful conduct and denies all remaining allegations in Paragraph 99 of Plaintiff's Petition.**

100. On or about August 1, Plaintiff emailed Ms. Duzan and Ms. Lynch with comments to Ms. Duzan's Check-in Form.

**ANSWER: Defendant admits the allegations in Paragraph 100 of Plaintiff's Petition.**

101. Plaintiff pointed out the things she felt were untrue, and that she felt Ms. Duzan had intentionally made inaccurate allegations with the intent to prove her incapable of performing the requirements of role or insubordinate.

**ANSWER: Defendant admits Plaintiff provided comments disagreeing with nearly every aspect of Ms. Duzan's check-in document. Defendant admits Plaintiff claimed Ms. Duzan had intentionally made false allegations against her and claimed Ms. Duzan was intent on proving her incapable or insubordinate. Defendant denies engaging in any unlawful conduct and all remaining allegations in Paragraph 101 of Plaintiff's Petition.**

102. Plaintiff stated that she was being put under more scrutiny than others and that Ms. Duzan provided ongoing support to everyone on the team except for Plaintiff.

**ANSWER: Defendant admits Plaintiff made such claims, but Defendant denies engaging in any unlawful conduct and denies all remaining allegations in Paragraph 102 of Plaintiff's Petition.**

103. Plaintiff said it was clear that she had an unequal experience and opportunities at Veeva and questioned why.

**ANSWER: Defendant admits Plaintiff made such claims, but Defendant denies engaging in any unlawful conduct and denies all remaining allegations in Paragraph 103 of Plaintiff's Petition.**

104. On or about August 2, 2023, Plaintiff joined a call with Ms. Duzan and Ms. Lynch.

**ANSWER: Defendant admits the allegations in Paragraph 104 of Plaintiff's Petition.**

105.     Plaintiff asked to record the meeting, but Ms. Lynch refused.

**ANSWER:  Defendant admits the allegations in Paragraph 105 of Plaintiff's Petition.**

106.     Ms. Duzan said that they decided it was time to part ways and Plaintiff would be separated effective immediately.

**ANSWER:  Defendant admits the allegations in Paragraph 106 of Plaintiff's Petition.**

107.     Plaintiff asked the reason for the separation.

**ANSWER:  Defendant admits the allegations in Paragraph 107 of Plaintiff's Petition.**

108.     Ms. Lynch said they did not have to have a reason and that it was obvious that they did not see eye to eye.

**ANSWER:  Defendant denies the allegations in Paragraph 108 of Plaintiff's Petition.**

109.     Ms. Lynch then excused Ms. Duzan from the call.

**ANSWER:  Defendant admits the allegations in Paragraph 109 of Plaintiff's Petition.**

110.     After Ms. Duzan left the call, Ms. Lynch told Plaintiff that she would receive severance for two pay periods and that Plaintiff would receive a regular paycheck on August 15 and another one on August 31 (or perhaps September 1) and that Plaintiff could continue receiving Defendant's health insurance benefits until the end of September.

**ANSWER:  Defendant admits the allegations in Paragraph 110 of Plaintiff's Petition.**

111.     Ms. Lynch said the severance and the benefits would be contingent on Plaintiff signing the separation agreement Ms. Lynch would send electronically by August 7, and that if Plaintiff did not sign the separation agreement, Plaintiff would not receive any further pay and that her health insurance would end at the end of August. After leaving the termination call with Plaintiff and Ms. Lynch, Ms. Duzan joined a CDMS team call and announced Plaintiffs departure claiming Plaintiff left Veeva for personal reasons.

**ANSWER:  Defendant admits Ms. Lynch informed Plaintiff of Veeva's policy to offer employees with less than five years of tenure a 30-day severance package, contingent upon signing a separation agreement. Defendant denies the remaining allegations in Paragraph 111 of Plaintiff's Petition.**

<u>**COUNT I MHRA**</u>
<u>**Discrimination on the basis of disability and/or perceived disability and/or record of disability in violation of the MHRA, R.S.Mo. § 213.055**</u>

112.    Plaintiff incorporates by reference all the other allegations of this Petition as if fully set forth herein.

**ANSWER:  Defendant incorporates by reference its responses from all previous paragraphs.**

113.    The MHRA prohibits discrimination against a person on the basis of his or her disability.

**ANSWER: The allegations in Paragraph 113 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant states the Missouri Human Rights Act speaks for itself, but expressly denies engaging in any unlawful employment practices. Defendant denies the remaining allegations in Paragraph 113 of Plaintiff's Petition.**

114.    Plaintiffs breast cancer is a physiological disorder or condition affecting r, the endocrine, hemic and lymphatic body systems.

**ANSWER:  Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 114 of Plaintiff's Petition, and therefore denies same.**

115.    Plaintiff's breast cancer substantially limits one or more of Plaintiff's major life activities, such as employment.

**ANSWER: The allegations in Paragraph 115 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 115 of Plaintiff's Petition.**

116. Plaintiffs breast cancer did not affect Plaintiffs ability to perform the essential functions of her job, with or without reasonable accommodations.

**ANSWER: The allegations in Paragraph 116 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 116 of Plaintiff's Petition.**

117. Alternatively, because of the breast cancer Plaintiff was being regarded as having a physical impairment and/or Plaintiff has a record of having such an impairment, which with or without a reasonable accommodation did not interfere with Plaintiff performing her job.

**ANSWER: The allegations in Paragraph 117 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 117 of Plaintiff's Petition.**

118. The conduct and actions of the above described perpetrators as set forth herein, including but not limited to (i) providing inaccurate and unjustified information in Plaintiffs Check-in Forms, (ii) not allowing Plaintiff to continue to lead the efforts related to the CDMS content track for both EU and NA Summit after she returned from her short-term disability/ medical leave related to her cancer; (iii) closely scrutinizing Plaintiffs performance as compared to other associates; (iv) not providing adequate guidance and support as compared to other associates; (v) not giving a pay raise to Plaintiff, and (vi) ultimately terminating Plaintiff, constituted discrimination against Plaintiff on the basis of her disability and/or record of disability and/or being regarded as having such a disability.

**ANSWER: Defendant denies the allegations in Paragraph 118 of Plaintiff's Petition.**

119.    Defendant's actions adversely altered the terms, conditions, and privileges of Plaintiffs employment, including but not limited to: (i) providing inaccurate and unjustified information in Plaintiffs Check-in Forms, (ii) not allowing Plaintiff to continue to lead the efforts related to the CDMS content track for both EU and NA Summit after she returned from her short-term disability/ medical leave related to her cancer; (iii) closely scrutinizing Plaintiffs performance as compared to other associates; (iv) not providing adequate guidance and support as compared to other associates; (v) not giving a pay raise to Plaintiff, and (vi) ultimately terminating Plaintiff.

**ANSWER: Defendant denies the allegations in Paragraph 119 of Plaintiff's Petition.**

120.    Plaintiffs' disability and/or record of disability and/or being regarded as having such a disability was a motivating factor in the discriminatory conduct she suffered and experienced, in that it actually played a role in and had a determinative influence in any of Defendant's conduct, as alleged herein.

**ANSWER: Defendant denies the allegations in Paragraph 120 of Plaintiff's Petition.**

121.    Defendant's actions against Plaintiff have caused her pain, anguish, anxiety and distress, as well as lost income.

**ANSWER: Defendant denies the allegations in Paragraph 121 of Plaintiff's Petition.**

122.    Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

**ANSWER: Defendant denies the allegations in Paragraph 122 of Plaintiff's Petition.**

## COUNT II
## Missouri Human Rights Act
## Retaliation in violation of the MHRA, R.S.Mo. § 213.070

123. Plaintiff incorporates by reference the allegations in all other paragraphs of this Petition as if fully set forth herein.

**ANSWER: Defendant incorporates by reference its responses from all previous paragraphs.**

124. Plaintiff engaged in the activity protected by the MHRA by opposing discrimination and retaliation on the basis of her disability and/or record of disability and/or perceived disability, as alleged herein, including but not limited to sending an email to her supervisor and Human Resources that Plaintiff felt "a marked change" in Ms. Duzan's attitude toward Plaintiff since Plaintiff shared her cancer diagnosis with Ms. Duzan in late November 2022, that this change continued since Plaintiff returned from her medical leave/ short-term disability 4 weeks prior, that Ms. Duzan sought to find issues with Plaintiff's performance since Plaintiff had returned from the leave for her cancer treatment, and that Ms. Duzan held Plaintiff to a different standard than and treated her unequally as compared to other associates.

**ANSWER: The allegations in Paragraph 124 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 124 of Plaintiff's Petition.**

125. Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

**ANSWER: Defendant denies the allegations in Paragraph 125 of Plaintiff's Petition.**

126. Defendant's conduct has caused Plaintiff pain, anguish, anxiety and distress.

**ANSWER: Defendant denies the allegations in Paragraph 126 of Plaintiff's Petition.**

30

127.    Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

**ANSWER:  Defendant denies the allegations in Paragraph 127 of Plaintiff's Petition.**

### COUNT III
### ADA/ADAAA- Discrimination, in violation of 42 U.S.C. § 12101 *et seq.*

128.    Plaintiff hereby incorporates by reference every other allegation of this Petition as if fully set forth herein.

**ANSWER:  Defendant incorporates by reference its responses from all previous paragraphs.**

129.    The ADA/ADAAA prohibits discrimination against a person who has, is regarded as having, or has a record of a disability, i.e., a physical or mental impairment that substantially limits one or more major life activities.

**ANSWER:  The allegations in Paragraph 129 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant states the ADA/ADAAA speaks for itself, but expressly denies engaging in any unlawful employment practices. Defendant denies any remaining allegations in Paragraph 129 of Plaintiff's Petition.**

130.    "Major life activities" as defined in the ADA/ADAAA include caring for oneself as well as the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

**ANSWER:  The allegations in Paragraph 130 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant states the ADA/ADAAA speaks for itself. Defendant denies any remaining allegations in Paragraph 130 of Plaintiff's Petition.**

131.    Plaintiff's breast cancer constituted a physical impairment that substantially limited her major life activities, such as reduced immune functioning or normal cell growth

**ANSWER:  Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 131 of Plaintiff's Petition, and therefore denies same.**

132.    Plaintiff's breast cancer did not affect Plaintiffs ability to perform the essential functions of her job, with or without reasonable accommodations.

**ANSWER:  The allegations in Paragraph 132 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 132 of Plaintiff's Petition.**

133.    Alternatively, because of breast cancer, Plaintiff was being regarded as having a physical impairment and/or Plaintiff has a record of having a physical impairment, which with or without a reasonable accommodation does not interfere with Plaintiff performing the essential functions of her job.

**ANSWER:  The allegations in Paragraph 133 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 133 of Plaintiff's Petition.**

134.    Plaintiff requested reasonable accommodations for her disability, and/or the need for reasonable accommodations was obvious to Defendant.

**ANSWER:  Defendant denies the allegations in Paragraph 134 of Plaintiff's Petition.**

135. Defendant engaged in conduct prohibited by the ADA/ADAAA, including but not limited to: (i) providing inaccurate and unjustified information in Plaintiffs Check-in Forms, (ii) not allowing Plaintiff to continue to lead the efforts-related to the CDMS content track for both EU and NA Summit after she returned from her short-term disability/ medical leave related to her cancer; (iii) closely scrutinizing Plaintiffs performance as compared to other associates; (iv) not providing adequate guidance and support as compared to other associates; (v) not giving a pay raise to Plaintiff, and (vi) ultimately terminating Plaintiff, constituted discrimination against Plaintiff on the basis of her disability and/or record of disability and/or being regarded as having such a disability.

**ANSWER: Defendant denies the allegations in Paragraph 135 of Plaintiff's Petition.**

136. The conduct and actions by the above-described perpetrators were performed on the basis of Plaintiff's disability and/or record of disability and/or perceived disability and constitute discrimination based on disability.

**ANSWER: Defendant denies the allegations in Paragraph 136 of Plaintiff's Petition.**

137. Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein, including but not limited to (i) providing inaccurate and unjustified information in Plaintiffs Check-in Forms, (ii) not allowing Plaintiff to continue to lead the efforts related to the CDMS content track for both EU and NA Summit after she returned from her short-term disability/ medical leave related to her cancer; (iii) closely scrutinizing Plaintiffs performance as compared to other associates; (iv) not providing adequate guidance and support as compared to other associates; (v) not giving a pay raise to Plaintiff, and (vi) ultimately terminating Plaintiff constituted discrimination against Plaintiff on the basis of her disability and/or record of disability and/or being regarded as having such a disability.

**ANSWER: Defendant denies the allegations in Paragraph 137 of Plaintiff's Petition.**

138.     The conduct of Defendant, described herein, would have detrimentally affected a reasonable person in Plaintiff's position.

**ANSWER: Defendant denies the allegations in Paragraph 138 of Plaintiff's Petition.**

139.     Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

**ANSWER: Defendant denies the allegations in Paragraph 139 of Plaintiff's Petition.**

140.     Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiffs status as a person who has, is regarded as having, or has a record of a physical and/or mental impairment that substantially limits one or more major life activities.,

**ANSWER: Defendant denies the allegations in Paragraph 140 of Plaintiff's Petition.**

141.     Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

**ANSWER: Defendant denies the allegations in Paragraph 141 of Plaintiff's Petition.**

**COUNT IV**
**ADA/ADAAA - Retaliation in violation of 42 U.S.C. § 12203**

142.     Plaintiff hereby incorporates by reference every other allegation of this Petition as if fully set forth herein.

**ANSWER: Defendant incorporates by reference its responses from all previous paragraphs.**

143.     The ADA/ADAAA prohibits retaliation against an individual who has opposed disability discrimination under the ADA/ADAAA.

**ANSWER: The allegations in Paragraph 143 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant states the ADA/ADAAA speaks for itself, but expressly denies engaging in any unlawful employment practices. Defendant denies any remaining allegations in Paragraph 143 of Plaintiff's Petition.**

144.    Plaintiff engaged in the protected activity by requesting reasonable accommodations and/or opposing discrimination based on her disability and/or perceived disability and/or record of disability.

**ANSWER: The allegations in Paragraph 144 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 144 of Plaintiff's Petition.**

145.    As a result of Plaintiffs protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to terminating Plaintiffs employment.

**ANSWER: Defendant denies the allegations in Paragraph 145 of Plaintiff's Petition.**

146.    Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiffs federally protected rights.

**ANSWER: Defendant denies the allegations in Paragraph 146 of Plaintiff's Petition.**

147.    At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

**ANSWER: Defendant denies the allegations in Paragraph 147 of Plaintiff's Petition.**

148.    Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

**ANSWER:  Defendant denies the allegations in Paragraph 148 of Plaintiff's Petition.**

149.    Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

**ANSWER:  Defendant denies the allegations in Paragraph 149 of Plaintiff's Petition.**

<u>**COUNT V**</u>
<u>**FMLA RETALIATION**</u>
<u>**in violation of 29 U.S.C. § 2601 et seq. [*sic*]**</u>

150.    Plaintiff hereby incorporates by reference each and every other allegation of this Petition as if fully set forth herein.

**ANSWER:  Defendant incorporates by reference its responses from all previous paragraphs.**

151.    Plaintiff was employed by Defendants [*sic*] and worked more than 1,250 hours in the 12 months prior to her request for FMLA leave in or around March 2023.

**ANSWER:  Defendant admits the allegations in Paragraph 151 of Plaintiff's Petition.**

152.    Plaintiff worked for Defendants [*sic*] at a location where 50 or more employees of Defendants [*sic*] worked within 75 miles.

**ANSWER:  Defendant admits the allegations in Paragraph 152 of Plaintiff's Petition.**

153.    Plaintiff had not been disciplined, placed on a performance improvement plan, or given a poor performance evaluation before she requested FMLA leave.

**ANSWER:  Defendant admits Plaintiff did not receive formal discipline, had not been placed on a performance improvement plan, and was not given a performance evaluation**

36

before April 2023, but deny these allegations have any relation to her request to take FMLA leave. Defendant denies the remaining allegations in Paragraph 153 of Plaintiff's Petition.

154.    Plaintiff exercised her FMLA rights by requesting an FMLA leave for her surgeries related to breast cancer.

**ANSWER:  The allegations in Paragraph 154 of Plaintiff's Petition call for a legal conclusion and thus no response is required. To the extent a response is required, Defendant admits Plaintiff requested FMLA leave. Defendant denies the remaining allegations in Paragraph 154 of Plaintiff's Petition.**

155.    In exercising her rights under the FMLA, Plaintiff complied with all of Defendant's policies and procedures for requesting FMLA leave.

**ANSWER:  Defendant denies the allegations in Paragraph 155 of Plaintiff's Petition.**

156.    After Plaintiff took her FMLA leave, and as a result of her requesting FMLA leave, Defendant did not allow her to return to her lead role in marketing projects and ultimately terminated Plaintiff.

**ANSWER:  Defendant denies the allegations in Paragraph 156 of Plaintiff's Petition.**

157.    Defendant retaliated against Plaintiff as a result of her decision to exercise her rights under the FMLA.

**ANSWER:  Defendant denies the allegations in Paragraph 157 of Plaintiff's Petition.**

158.    Plaintiff was treated less favorably than other employees who had not requested leave under the FMLA.

**ANSWER:  Defendant denies the allegations in Paragraph 158 of Plaintiff's Petition.**

159.     Defendant took adverse employment actions against Plaintiff, in retaliation for availing herself of her FMLA rights, including but not limited to not allowing her to return to her lead role in marketing projects by terminating Plaintiffs employment.

**ANSWER:  Defendant denies the allegations in Paragraph 159 of Plaintiff's Petition.**

160.     A reasonable person in Plaintiffs position would have found Defendant's actions against and treatment of Plaintiff, after she exercised her FMLA rights, to be materially adverse.

**ANSWER:  Defendant denies the allegations in Paragraph 160 of Plaintiff's Petition.**

## <u>DEFENDANT'S GENERAL DENIAL</u>

**To the extent not expressly admitted herein, Defendant denies all allegations contained in the Petition.**

## <u>DEFENDANT'S AFFIRMATIVE AND OTHER DEFENSES</u>

Without assuming any burden on proof that by law is not otherwise Defendant's, Defendant asserts the following affirmative and other defenses:

1.     Plaintiff's Petition fails to state a claim for which relief may be granted.

2.     Defendant is entitled to judgment as a matter of law on each of the claims in Plaintiff's Petition.

3.     Plaintiff's Petition is barred because Defendant's actions were made in good faith and were justified, and Defendant had an objectively reasonable belief that its conduct did not violate the law.

4.     Defendant acted consistent with its own business judgment which it was legally entitled to do.

38

5.    Plaintiff's Petition is barred because Defendant's actions were based on legitimate, non-discriminatory and non-retaliatory business reasons unrelated to any purported protected conduct or protected status.

6.    Defendant would have taken the same actions concerning Plaintiff, regardless of any alleged impermissible motive (which is denied).

7.    Plaintiff's alleged medical condition and protected activities were not motivating or determining factors in any action taken by Defendant.

8.    There is no causal connection between protected conduct displayed by Plaintiff and her termination, and there is no evidence of animus by Defendant against Plaintiff for the exercise of any right protected by 29 U.S.C. § 2601, et seq.

9.    Defendant made no decision nor took any action that was motivated by malice or evil motive or intent, nor was Defendant callously indifferent to Plaintiff's protected rights, and therefore is not liable for punitive damages.

10.    Plaintiff's claim is barred, in whole or in part, to the extent that Plaintiff seeks to recover damages in excess of the type and amounts allowed or provided by law.

11.    Subject to proof through discovery, Plaintiff has failed to reasonably and properly mitigate her damages.

12.    Plaintiff's claim is barred by the doctrines of unclean hands, waiver and estoppel.

13.    Defendant states that the standard used to determine the amount of such damages as emotional distress damages and punitive damages, if any, is vague and overly arbitrary, and, as such, supplies no notice of potential repercussions of the alleged misconduct, thereby denying Defendant due process under the Fifth and Fourteenth Amendments to the United States Constitution, as well as under the Missouri Constitution. Defendant also affirmatively asserts that

any request for arbitrary emotional distress damages, punitive damages, and/or subsequent impositions of such damages violates its rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as similar provision to the Missouri Constitution.

14.     Plaintiff is not entitled to any award for lost back wages for any period during which she was unable to work.

15.     Plaintiff is not entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) because, at all times relevant to this action, any act or omission by Defendant giving rise to Plaintiff's claim for relief was made in good faith, and Defendant had reasonable grounds for believing that its act or omission was not a violation of the FMLA.

16.     An award of liquidated damages is not proper in this case because Plaintiff cannot show that Defendant intended to cause injury to Plaintiff or otherwise acted with reckless or wanton disregard for Plaintiff's rights.

17.     Without conceding burden of proof, liability, or that Plaintiff was damaged by any actions of Defendant, Plaintiff's damages should be offset to the extent Plaintiff has or may receive duplicative recovery.

18.     Subject to proof through discovery, Plaintiff's claim or any recovery, is barred in whole or in part by the doctrine of after-acquired evidence.

19.     Defendant denies that any employees or agents, acting within the course and scope of their employment or agency, violated any statute or caused any damage or injury to Plaintiff.

20.     Plaintiff was an at-will employee of Defendant and her employment ended for legitimate, lawful reasons.

21.     Plaintiff's alleged damages, if any, are barred or limited as a matter of law by the applicable damages' caps.

22.     Defendant reserves the right to amend its Answer to Plaintiff's Petition; to add additional or other affirmative defenses; to delete or withdraw affirmative defenses; and to add such counterclaims as may become apparent or necessary after a reasonable opportunity for discovery or otherwise.

WHEREFORE, Defendant requests that the Court dismiss Plaintiff's Petition with prejudice, enter judgment in Defendant's favor, award Defendant its attorney's fees and costs, and for any further relief the Court deems just and proper.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ Madeline Nebel
Shelley I. Ericsson     MO #48047
Madeline Nebel        MO #75692
700 W. 47th Street, Suite 500
Kansas City, MO  64112
816-471-1301
816-471-1303 (*Facsimile*)
shelley.ericsson@ogletree.com
maddie.nebel@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 10th day of September 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Kirk D. Holman       MO #50715
Aiman Dvorak      MO #69068
HOLMAN SCHIAVONE, LLC
4600 Madison Ave., Suite 810
Kansas City, MO 64112
816.283.8738
816.283.8739
kholman@hslawllc.com
advorak@hslawllc.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Madeline Nebel
**ATTORNEY FOR DEFENDANT.**

64127525.v1-Ogletree